**MILLER, Alien Property Custodian, v. UNITED STATES ex rel. NEW PROCESS METALS CO., Inc.**

(Court of Appeals of District of Columbia. Submitted February 8, 1923. Decided April 3, 1923.)

No. 3924.

1. War ⬗⟹12—Provision requiring Custodian to repay patent royalties, if no claim is made by owner, is mandatory.

The provisions of Trading with the Enemy Act, § 10, subds. (c) and (d), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ee, that royalties paid to the Alien Property Custodian by the licensee of enemy-owned patents shall be deposited as a trust fund, payable as provided by subdivision (f), which provides that within one year after the end of the war the owner of the patent may sue the licensee for the use thereof, and a reasonable royalty recovered shall be paid from the funds deposited by the licensee, and that if no suit is brought the funds deposited shall be repaid to the licensee, are mandatory, and give the Custodian no discretion to refuse to pay the deposit to a licensee, where no suit was brought within the period prescribed.

2. War ⬗⟹12—Ownership of patent by citizens does not preclude return to licensee of deposit with Custodian.

Where the Alien Property Custodian had taken possession of patents as enemy-owned, and had licensed the use of such patents under Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.), the fact that thereafter it was ascertained the patents were in fact owned by citizens does not defeat the right of the licensee to a return of the amount deposited by him with the Alien Property Custodian, as required by section 10 (section 3115½ee), where the owner of the patent brought no suit against the licensee for royalties within the time prescribed, since Congress made provision by section 9 of the act (section 3115½e) for recovery by a non-enemy owner of property which had been mistakenly seized, and by that section expressly stated that its provisions should not apply to money paid to the custodian under section 10 of the act.

3. War ⬗⟹12—Custodian receives license fees as trustee for patentee.

The Custodian receives the funds deposited by a licensee of enemy-owned patents, to secure the payment of royalties to the owner of the patents after the war, as an official trustee of an express statutory trust, and he possesses no authority to vary the terms of the trust.

Appeal from the Supreme Court of the District of Columbia.

Suit for mandamus by the United States, on relation of the New Process Metals Company, Inc., against Thomas W. Miller, Alien Property Custodian. Writ issued, and respondent appeals. Affirmed.

Peyton Gordon and Dean Hill Stanley, both of Washington, D. C., for appellant.

William Sabine, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. This is an appeal from a decision of the Supreme Court of the District of Columbia. The New Process Metals Company, Inc., brought suit in that court for a writ of mandamus to compel the Alien Property Custodian to repay to it the sum of $12,090.43, which it had deposited with the Custodian pursu-

ant to the terms of a wartime license issued to it by the President of the United States for the use of a patent, which had been seized by the Custodian as enemy-owned property, under the Trading with the Enemy Act. 40 U. S. Stat. 420 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.). In this decision that enactment will be referred to simply as "the act."

The petition alleged that in the month of February, 1918, the Treibacher Chemische Werke Gesellschaft, of Austria, was an alien enemy under the act, and that it owned and controlled United States letters patent No. 837,017, for pyrophoric alloy, and No. 976,760, for pyrophoric mass; that the petitioner, being a corporation organized within the United States, and desiring to manufacture said patented compositions of matter, and to carry on a process under said patents, applied to the President of the United States under section 10 (c) of the act (section 3115½ee) for a license to use said invention, and filed an application therefor with the Federal Trade Commission in conformity with an executive order of October 12, 1917; and that on March 30, 1918, a license was regularly issued to the petitioner to make, use, and vend said patented inventions within the United States, upon the condition, among others, that the petitioner should pay to the Alien Property Custodian a royalty of 5 per cent. of the gross amounts received from the sales thereof, which said payments under the act were to be returned to the petitioner in event no suit should be brought by the owner of the patents against the petitioner to recover for the use of the same within one year after the end of the war, or in event no notice of such suit should be filed with the Custodian within 30 days after the entry thereof; that under said provision the petitioner as licensee aforesaid duly paid over to the Custodian the aggregate sum of $12,090.43, which was deposited by the Custodian in the Treasury of the United States; that more than one year has elapsed since the official termination of the war, but that no suit has been brought by any person or corporation, as owner of said patents, to recover against the petitioner for the use thereof under said license, nor has any notice of the filing of such a suit been served upon the Custodian; that, accordingly, the petitioner has become entitled to the repayment of said sum of $12,090.43, and has made due demand therefor, but repayment has been refused by the Custodian. Wherefore the petitioner prays for a writ of mandamus and for general relief.

The defendant, the Alien Property Custodian, answered, admitting that at the times in question the Treibacher Chemische Werke Gesellschaft, of Austria, was an alien enemy under the act, and that the defendant as Custodian had determined, after investigation, that said letters patent were owned by said Austrian company, and accordingly had taken possession of them as enemy-owned property; but defendant now denies that said Austrian company was in fact the actual owner of said letters patent at the time of said seizure. The defendant admitted that after said seizure the petitioner had applied to the proper authorities under the act, for a license to make and vend said patented compositions, and that a license had been issued to it accordingly; that thereafter under said license the petitioner had paid to the defendant

as Custodian the aggregate sum of $12,090.43, all of which, however, had accrued upon sales made under letters patent No. 837,017 only; and that furthermore after the receipt of said payments the defendant as Custodian had made sale of said letters patent under the provisions of the act, and deposited the proceeds of the sale, to wit, the sum of $79,200.50, with the Treasurer of the United States.

But defendant says that after said proceedings were had one Charles Ganz appeared and filed a claim with the defendant as Custodian under section 9 of the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), claiming to be an American citizen and the owner of letters patent No. 837,017, and demanding the return to him of the proceeds of the sale thereof; that the claim of said Charles Ganz was investigated and approved by the Attorney General of the United States under authority deputed to him by the President under section 9 of the act; that thereupon, pursuant to orders issued by the Attorney General, the defendant paid the proceeds of the sale to said claimant. Defendant admits that no notice of any suit by any person against the petitioner, for a recovery because of petitioner's use as licensee of said letters patent, has ever been filed with him as Custodian.

The petitioner demurred to the answer. The court sustained the demurrer, and for want of further answer allowed a writ of mandamus to issue as prayed in the petition. This appeal challenges that decision.

[1] We affirm the decision thus brought before us. Under subdivisions (c) and (d) of section 10, it is provided that the royalties paid to the Alien Property Custodian by the licensee of enemy-owned patents shall be deposited forthwith in the Treasury of the United States "as a trust fund for the said licensee and for the owner of the said patent, * * * to be paid from the treasury upon order of the court, as provided in subdivision (f) of this section, or upon the direction of the Alien Property Custodian." Under subdivision (f) aforesaid it is provided that the owner of any patent under which a license is granted may, after the end of the war and until the expiration of one year thereafter, sue the licensee for the use of the patent under the license, in which case notice of the suit shall be filed with the Alien Property Custodian within 30 days after the date of entry thereof. The court may then decree the payment of reasonable royalty to the owner, and the royalties held by the Custodian shall be liable pro tanto for the satisfaction of such decree. If after the payment in full of such a decree there shall remain any balance of said deposit, such balance shall be repaid to the licensee. It is furthermore provided that:

"If no suit is brought within one year after the end of the war, or no notice is filed as above required, then the licensee shall not be liable to make any further deposits, and all funds deposited by him shall be repaid to him on order of the alien property custodian."

This provision is final and peremptory in character relative to the disposition of the deposits, in the absence of a suit brought by the owner under section 10 (f) within the period of one year after the end of the war.

[2] The defense of the Custodian herein is based entirely upon the allegation of the answer that at the time of the seizure of the letters

patent, and the issue of the license to the petitioner, they were not in fact owned or controlled by the Treibacher Chemische Werke Gesellschaft, of Austria. It is implied that they were actually owned by Charles Ganz at the time of the seizure, and it is alleged that he was then an American citizen. It is accordingly claimed by the defendant that the license to the petitioner was issued under a mistake of fact, and was void, "and that the royalties paid to the Alien Property Custodian and deposited by him in the treasury of the United States were paid under a mistake of fact, and the remedy of the relator, if it has any, is not under section 10 (f), since that section applies only to cases where enemy patents were properly licensed," and "the Trading with the Enemy Act applies only to patents owned by enemies," and "does not affect patents owned by those not enemies."

We cannot agree with this contention. As already stated the act expressly provides that the sums of money which may be paid as royalties by a licensee to the Custodian shall be held as a trust fund for the licensee and for the owner of the patent, and that, in case no suit be brought by the owner against the licensee within one year after the termination of the war, the Custodian shall repay the deposit to the licensee. This provision is without condition or qualification, and in effect it extended an authoritative assurance to the licensee upon which he was entitled to rely. Nor did Congress overlook the fact that non-enemy property might by mistake of the Custodian be seized and licensed as enemy-owned property; for in section 9 of the act due provision is made for the recovery by a non-enemy owner of property which has been thus mistakenly seized, or of its proceeds if already sold by the Custodian, but at the same time the section expressly states that its provisions shall not apply to money paid to the Custodian under section 10 of the act, or, in other words, to royalties like these when deposited with the Custodian by the licensees of patents. This provision sustains the view that Congress did not intend to permit any owner of property, whether enemy or non-enemy in character, when thus seized and licensed, to secure any part of the money paid by the licensee to the Custodian, except upon a compliance with the terms of section 10 aforesaid. And there is clear reason for this, since the claim of an owner against a licensee is limited to a "reasonable royalty" for the use of the licensed patent, and the sum held by the Custodian may be either more or less than a reasonable royalty therefor. In the absence of an agreement between the parties, the amount can be determined only by the decision of a court, and there is no apparent reason why a suit brought for that purpose should not be limited to one year after the close of the war, regardless of the status of the owner.

[3] And furthermore it should be remembered that the Custodian received the funds in question as an official trustee of an express statutory trust, and he possesses no authority to vary the terms of the trust. It is not claimed that the licensee has been guilty of any default, and the Custodian is not justified in refusing to perform the terms of the trust because of a mistake of fact committed by himself, without participation in any manner by the licensee. We think, indeed, that bare good faith toward the licensee requires the conclusion that Congress intended the Custodian to deal with the funds in question according to

the express terms of the trust, regardless of the question of title to the licensed property. Moreover, it is not the duty of the Custodian to intervene beyond the directions of the act between the owner and the licensee in relation to royalties, and particularly is that true in this case, since apparently no controversy has arisen herein between the parties actually interested in that question.

It appears accordingly that the Alien Property Custodian is in control of the sum of $12,090.43, royalties paid by the petitioner as licensee under section 10 aforesaid, which the statute directs the Custodian to repay to the petitioner under such circumstances as exist in this case. It is therefore right that a mandamus should issue to require him to pay the same to the petitioner, and the decision of the trial court to that effect is affirmed, with costs.